Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/16/2019 12:07 AM CDT

State of Nebraska, appellee, v. Eugene T. Cosey,
also known as John Lnu, also known
as "G," appellant.

___ N.W.2d ___

Filed May 31, 2019.    No. S-18-747.

1. **Identification Procedures: Due Process: Appeal and Error.** A district court's conclusion whether an identification is consistent with due process is reviewed de novo, but the court's findings of historical fact are reviewed for clear error.

2. **Identification Procedures: Police Officers and Sheriffs: Pretrial Procedure.** An identification infected by improper police influence is not automatically excluded. Instead, the trial judge must screen the evidence for reliability pretrial. If there is a very substantial likelihood of irreparable misidentification, the judge must disallow presentation of the evidence at trial. But if the indicia of reliability are strong enough to outweigh the corrupting effect of the police-arranged suggestive circumstances, the identification evidence ordinarily will be admitted, and the jury will ultimately determine its worth.

3. ____: ____: ____. When considering the admissibility of an out-of-court identification, a trial court must first decide whether the police used an unnecessarily suggestive identification procedure. If they did, the court must next consider whether the improper identification procedure so tainted the resulting identification as to render it unreliable and therefore inadmissible.

4. **Identification Procedures.** Reliability is the linchpin in determining the admissibility of identification testimony.

5. ____. To determine the reliability of an out-of-court identification, the trial court must consider, based on the totality of the circumstances, (1) the opportunity of the witness to view the alleged criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of his or her prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and

the confrontation. Against these factors is to be weighed the corrupting influence of the suggestive identification itself.

Appeal from the District Court for Clay County: VICKY L. JOHNSON, Judge. Affirmed.

Mark Porto, of Porto Law Office, for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

HEAVICAN, C.J.

## INTRODUCTION

Eugene T. Cosey was charged with delivery of a controlled substance, a Class II felony, pursuant to Neb. Rev. Stat. § 28-416 (Reissue 2016). During the course of the proceedings, Cosey repeatedly sought to suppress a confidential informant's identification of him as the person who sold the drugs to the informant, arguing that the identification violated his due process rights. Cosey was convicted following a jury trial in which the informant's identification was admitted. We affirm.

## BACKGROUND

On August 2, 2017, Cosey was charged with delivery of a controlled substance. The charge stemmed from an October 17, 2016, alleged narcotics transaction that had occurred between a confidential informant and a man known to the informant only as "G."

On October 17, 2016, the informant was working at his regular job when an acquaintance introduced the informant to a man who sought to sell the informant an amount of methamphetamine. The informant, who has served as a confidential informant for law enforcement since 1999, met with the purported narcotics dealer, identified as G, for approximately

10 to 15 minutes. During the course of the conversation, the informant and G agreed to meet later that day to complete the proposed narcotics sale. The informant then contacted Officer Thomas Hayes, an investigator with the Fillmore County sheriff's office, to arrange to have the drug transaction recorded by law enforcement.

At approximately 4 p.m. on October 17, 2016, the informant again met with G, this time in Sutton, Nebraska. Hayes was positioned across the street as the informant and G completed the narcotics sale. According to the informant, G was in the informant's vehicle for approximately 3 minutes while the sale of narcotics took place. During that time, the informant was recording audio of the encounter. The informant testified that he made detailed observations of the man that sold him the narcotics, but further indicated that he knew the subject only as "G" or "John."

Following the drug transaction, the informant met with Hayes at another location. At that point, the informant provided Hayes with the methamphetamine he had purchased, along with the unused money and the recording device. The informant was only able to provide Hayes with the name "G" or "John" as the individual who sold him the methamphetamine.

At Hayes' behest, the informant subsequently attempted to conduct a second transaction with G. However, the informant was advised by a woman purporting to be G's girlfriend that G was incarcerated and unable to sell the informant any additional methamphetamine.

In the weeks that followed, Hayes attempted to determine the identity of G. During the course of his efforts, on November 9, 2017, Hayes contacted the police department in Hastings, Nebraska, and inquired whether anyone in the department knew of any person recently arrested going by the moniker "G." The office manager of the Hastings Police Department indicated that Cosey was known to use the moniker "G," but that Cosey had not recently been arrested. The Hastings Police Department provided Hayes with a photograph

of Cosey. Hayes then sent a text message and the photograph to the informant, asking if it was a photograph of G. The informant responded that the photograph provided by Hayes was the man he knew as G.

On August 2, 2017, Cosey was charged with delivery of a controlled substance, a Class II felony.[1] On December 15, Cosey filed an amended motion to suppress seeking, among other things, suppression of the informant's identification of Cosey on the ground that the identification was the result of an unduly suggestive identification procedure utilized by Hayes.

A suppression hearing was held on February 22 and 23, 2018. The district court entered an order finding that the identification procedure was unduly suggestive; however, the court ultimately concluded that the informant's identification was sufficiently reliable to allow it to be admitted into evidence. The court therefore denied Cosey's motion to suppress.

On May 2, 2018, the State filed an amended information charging Cosey with the original charge of delivery of a controlled substance, as well as a habitual criminal enhancement. Following a jury trial, Cosey was found guilty of delivery of a controlled substance. On July 11, the State dismissed the habitual criminal enhancement and Cosey was sentenced to 3 to 5 years' imprisonment.

ASSIGNMENT OF ERROR

Cosey's sole assignment of error is that the district court erred in denying his motion to suppress.

STANDARD OF REVIEW

[1] A district court's conclusion whether an identification is consistent with due process is reviewed de novo, but the court's findings of historical fact are reviewed for clear error.[2]

---

[1] See § 28-416(1)(a) and (2)(a).

[2] *State v. Taylor*, 287 Neb. 386, 842 N.W.2d 771 (2014).

## ANALYSIS

Cosey argues that the district court erred in denying his motion to suppress. Cosey notes that the district court was correct in finding that the photographic identification of Cosey made by the witness was unduly suggestive, a finding that the State neither contests nor concedes. Cosey argues that the district court erred in its conclusion regarding the reliability of the witness' identification as analyzed with the five factors set forth in U.S. Supreme Court precedent.[3] Therefore, Cosey contends, the identification made by the informant should not have been admitted.

[2] The U.S. Supreme Court has noted:

An identification infected by improper police influence . . . is not automatically excluded. Instead, the trial judge must screen the evidence for reliability pretrial. If there is "a very substantial likelihood of irreparable misidentification" . . . the judge must disallow presentation of the evidence at trial. But if the indicia of reliability are strong enough to outweigh the corrupting effect of the police-arranged suggestive circumstances, the identification evidence ordinarily will be admitted, and the jury will ultimately determine its worth.[4]

[3] The U.S. Supreme Court has set forth a two-prong test for determining the admissibility of out-of-court identifications. The Court stated that when considering the admissibility of an out-of-court identification, a trial court must first "decide whether the police used an unnecessarily suggestive identification procedure. . . . If they did, the court must next consider whether the improper identification procedure so tainted the resulting identification as to render it unreliable and therefore

---

[3] See *Neil v. Biggers*, 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972). See, also, *Manson v. Brathwaite*, 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977).

[4] *Perry v. New Hampshire*, 565 U.S. 228, 232, 132 S. Ct. 716, 181 L. Ed. 2d 694 (2012).

inadmissible."[5] As is the case here, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it.[6]

[4,5] Reliability is the linchpin in determining the admissibility of identification testimony.[7] In *State v. Faust*,[8] we adopted the U.S. Supreme Court's test for determining the admissibility of identification testimony such as the identification in this case. To determine the reliability of an out-of-court identification, the trial court must consider, based on the totality of the circumstances, (1) the opportunity of the witness to view the alleged criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of his or her prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. Against these factors is to be weighed the corrupting influence of the suggestive identification itself.[9]

Applying the two-prong test to this case, we accept for the purpose of this appeal the district court's conclusion that law enforcement's use of a single photograph sent to the witness with the potentially leading question, "'Is this "G"?'" resulted in the identification's being infected by improper police influence. But our analysis does not end there.

We turn to the second prong of the two-prong test and weigh the reliability of the identification against the unduly suggestive acts of law enforcement. We begin by weighing the reliability of the identification, and in doing so, we turn to the five factors discussed above.

---

[5] *Id.*, 565 U.S. at 235.

[6] *Manson v. Brathwaite, supra* note 3.

[7] *State v. Faust*, 269 Neb. 749, 696 N.W.2d 420 (2005) (citing *Manson v. Brathwaite, supra* note 3). See, also, *Perry v. New Hampshire, supra* note 4.

[8] *State v. Faust, supra* note 7.

[9] *Id.* (citing *Manson v. Brathwaite, supra* note 3; *Neil v. Biggers, supra* note 3).

*Opportunity of Witness to*
*View Alleged Criminal*
*at Time of Crime.*

Cosey concedes that the informant had a significant opportunity to view G during the course of two meetings that lasted for a combined total of approximately 18 minutes. The evidence presented at the hearing on Cosey's motion to suppress was that the informant was introduced to G through an acquaintance. The informant testified that their introduction and initial meeting lasted for approximately 10 to 15 minutes and that the two were in close proximity to one another.

Later the same day, October 17, 2016, the informant and G met again. Although their second meeting lasted only approximately 3 minutes, the two were again within mere feet of one another. During the course of this meeting, the two exchanged money for narcotics and engaged in a brief discussion. We further note that the second meeting, like the first, occurred during daylight hours when the informant had an uninhibited view.

*Witness' Degree of Attention.*

During the course of the informant's testimony, he indicated that he had worked as an informant since 1999. The informant testified that throughout the course of his 19-year career, he learned to make concentrated observations of specific details of his surroundings and interactions. Specifically, the informant noted that he was sure to take note of license plates; speech patterns; and physical, as well as clothing, descriptions when interacting with others.

The informant indicated that on October 17, 2016, he was engaging in such concentrated observations. The informant testified that he observed G pull into the area of an ethanol fuels plant in Hastings in a white, four-door Buick. The informant recalled G's being seated in the rear passenger seat of the vehicle and further provided an accurate description of G under the circumstances.

Cosey argues that the informant's attentiveness is "virtually meaningless" considering the delay between the informant's observations on October 17, 2016, and Hayes' presentation of Cosey's photograph on November 9.[10] Cosey argues that the informant's testimony, in which he indicated that he had been provided Cosey's photograph "four days later or so, five days later," calls into question the informant's level of attention, given the fact that he was not presented with Cosey's photograph until 23 days after October 17. Cosey further argues that the informant's inaccuracies with regard to when the informant provided the identification should be viewed in light of the "significant financial incentive" to identify Cosey and "remain in the good graces of . . . Hayes."[11]

While the informant's attention and recollection as to the specific dates and overall timeline of the investigation may be flawed, that lapse does not necessarily translate to a lack of attention with regard to the specific event recalled and described. Additionally, Cosey's claim regarding the informant's recollection of the timetable and his financial incentive calls into question the informant's overall credibility, which was a determination more appropriately considered by the jury.

Based on the record, the informant was not a casual observer. The record demonstrates that through the informant's 19 years of experience, which formed his expertise in information gathering, the informant developed a strategy to coordinate a surveilled narcotics purchase with G. The informant was in close proximity to G during the narcotics transaction; thus, his observation of G was not based on passing glances, but on studied observation. The record further demonstrates that the informant testified he was able to describe, by paying close attention, the environment, background, and physical description of the parties involved in the two

---

[10] Brief for appellant at 13.

[11] *Id.* at 14.

transactions; thus, the informant had a high degree of certainty in this case.

*Accuracy of His or Her Prior*
*Description of Criminal.*

The informant first described to Hayes that G was an African-American male, bald, and 5 feet 8 or 9 inches tall. During the course of the suppression hearing, the informant identified Cosey as G, but noted that G had "gained some weight" since the informant had last seen him on October 17.

Cosey makes two arguments in an attempt to call into question the accuracy of the informant's identification. First, Cosey alleges that the informant had no way of knowing whether G was in fact bald, because the photographs taken by Hayes during the narcotics transaction show G wearing a baseball cap. Second, Cosey argues that the informant misidentified the name of the suspected drug trafficker to Hayes as being "John" and not "G."

Cosey's argument that the informant could not have observed G's hair length and style does not carry much weight. The presence of a baseball cap does not necessarily defeat the ability of the informant to observe G's hair length at some point during the course of their two interactions. The State contends that the photographs depicting G wearing a baseball cap were taken at the second meeting, during the afternoon of October 17, 2016.

As to Cosey's second argument that the informant originally misidentified or misrepresented to Hayes the name of the suspected trafficker, we find this argument disingenuous. In his brief, Cosey argues that the informant "stated that the seller went by the name 'John'" and further contends that Hayes testified almost exclusively that the seller's name was "'John'" rather than "'G.'"[12] However, the record reflects that while Hayes used the name "John" when referring to the seller, Hayes, in fact, noted that he was provided with two names that

---

[12] *Id.*

the seller was known to use. We find that the informant's prior description was sufficiently accurate.

*Level of Certainty Demonstrated
at Confrontation.*

At the suppression hearing, the informant testified that he had no doubt that the person from whom he purchased drugs was Cosey. The district court, in its order, took note of the level of certainty that the informant had with regard to Cosey's being the person that allegedly sold the contraband. The record reflects that the informant had a high level of certainty in his identification and that the level of certainty did not waver at the confrontation stage.

*Time Between Crime
and Confrontation.*

The first instance of the informant's meeting G and purchasing narcotics occurred on October 17, 2016. Hayes testified that he received the photograph of Cosey on November 9. At that point, the photograph was provided to the informant, who identified it as a photograph of Cosey, or G, the man who sold him the drugs. This initial identification occurred 23 days after the informant observed G.

The suppression hearing where the informant identified Cosey as "G" occurred on February 22, 2018, more than 16 months after the events giving rise to Cosey's arrest. Although this is a significant lapse in time that weighs against allowing the identification, based on the totality of the circumstances, we cannot say that there is a substantial likelihood of irreparable misidentification in this case.[13]

*Balancing Test.*

Although identifications arising from single-photograph displays may be viewed in general with suspicion, in this case,

---

[13] See *Manson v. Brathwaite, supra* note 3 (acknowledging Court's concern regarding lapse of 7 months in *Neil v. Biggers, supra* note 3).

we find little pressure on the witness to acquiesce in the suggestion that such a display entails.[14] Cosey raises a legitimate concern regarding the potential coercive nature of the quid pro quo relationship that often exists between confidential informants and law enforcement; here, that fear is largely alleviated by the fact that the informant has provided reliable information to law enforcement for 19 years and has significant interest in providing accurate information.

Although it plays no part in our *Faust* analysis, the assurance as to the reliability of the identification is hardly undermined by the fact that Cosey was also identified by his acquaintance as the person the acquaintance introduced to the informant.[15] Further, on the voice recording of the narcotics transaction, Cosey's voice was identified by an officer familiar with Cosey's voice and speech patterns.

We cannot say that under all the circumstances of this case there is "'a very substantial likelihood of irreparable misidentification.'"[16] Short of that, such evidence is for the jury to weigh.[17] Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.[18] Under the totality of the circumstances, the identification of Cosey was reliable, even though the confrontation procedure may have been suggestive.

## CONCLUSION

The judgment of the district court is affirmed.

AFFIRMED.

---

[14] *Id.* See, also, *Simmons v. United States*, 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968).

[15] See *State v. Faust, supra* note 7.

[16] See *Manson v. Brathwaite, supra* note 3, 432 U.S. at 116 (quoting *Simmons v. United States, supra* note 14).

[17] *Id.*

[18] *Id.*